# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| PALM BAY POLICE AND FIREFIGHTERS' PENSION FUND, individually and on behalf of all others similarly situated, | **CASE NO:** |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| vs. | |
| FIDELITY NATIONAL INFORMATION SERVICES, INC., GARY NORCROSS, JAMES WOODALL, and STEPHANIE FERRIS, | **DEMAND FOR A JURY TRIAL** |
| Defendants. | |

Plaintiff Palm Bay Police and Firefighters' Pension Fund ("Plaintiff"), by and through its attorneys, alleges the following upon information and belief, except as to allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, among other things, its counsel's investigation, which includes, without limitation: (a) review and analysis of public filings made by Fidelity National Information Services, Inc. ("Fidelity National" or the "Company") with the U.S. Securities and Exchange Commission (the "SEC"); (b) review and analysis of press releases and other publications disseminated by Defendants (defined below) and other parties; (c) review of news articles, shareholder communications, conference calls, and postings on Fidelity National's website concerning the Company's public

statements; and (d) review of other publicly available information concerning the Company and the Individual Defendants.

### NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of all persons or entities who purchased Fidelity National common stock between February 9, 2021 and February 10, 2023, inclusive (the "Class Period"), against Fidelity National and certain of its officers (collectively "Defendants") seeking to pursue remedies under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (the "Exchange Act").

2.     Fidelity National provides global e-commerce and payment technologies to financial institutions and businesses and, in recent years, has become the largest processing and payments company in the world.  The Company is most known for its development of Financial Technology, or FinTech, and offers its solutions in three primary segments: Merchant Solutions; Banking Solutions; and Capital Market Solutions.  The Merchant Solutions segment accounted for approximately 30% of the Company's total revenue in 2021, and serves merchants by enabling them to accept, authorize, and settle electronic payment transactions.

3.     Throughout its history, Fidelity National has acquired several other financial technology firms.  Relevant to the allegations here, on July 31, 2019, Fidelity National announced it had closed the acquisition of payments company Worldpay, Inc. ("Worldpay") for $43 billion, consisting of $35 billion in cash and

the assumption of $8 billion in debt.  As a result of the acquisition, the Worldpay business became part of the Merchant Solutions segment.

4.     During the Class Period, Defendants made false and/or misleading statements about Fidelity National's latest acquisition of Worldpay by assuring investors it had "successfully completed the Worldpay integration" and touting the benefits of the Worldpay integration for the Company.  As a result, Defendants' positive statements about the Company's business, operations, and prospects during the Class Period were materially false and /or misleading.

5.     Investors slowly learned that the Company's important Merchant Solutions segment was underperforming and that the Company's integration of Worldpay was not "successfully completed."

6.     First, on August 4, 2022, Fidelity National announced that its Chief Financial Officer ("CFO"), James Woodall, planned to "step down" as Corporate Executive Vice President and CFO effective November 4, 2022.  On this news, the price of Fidelity National stock fell more than 7%, from a closing price of $104.13 per share on August 3, 2022 to a closing price of $96.57 per share on August 4, 2022.

7.     Other management changes soon followed.  On October 18, 2022, the Company announced that Stephanie Ferris, who was appointed President of the Company in February and had served as the CFO of Worldpay, would become the new Chief Executive Officer ("CEO") effective January 1, 2023.  The Company also announced that that the outgoing CEO, Gary Norcross, who had been with

the Company since 1988 and in the CEO role since 2015, would become Executive Chairman of the Board of Directors upon the transition.

8.     Then, on November 3, 2022, Fidelity National reported that its Merchant Solutions segment – namely Worldpay – suffered a "margin contraction of 430 basis points."  In response to this news, the price of Fidelity National stock declined more than 29%, from a closing price of $79.47 per share on November 2, 2022, to a closing price of $57.18 per share on November 3, 2022.  Analysts reported the new Fidelity National management "recognize[d] the need to rebuild investor confidence."

9.     Finally, before markets opened on February 13, 2023, Fidelity National announced it would spin off Worldpay, and in the process, the Company recognized a stunning $17.6 billion write-down on the asset.  In response to this revelation, the price of Fidelity National stock fell more than 12%, from a closing price of $75.43 per share on the prior trading day of February 10, 2023, to a closing price of $66.00 per share on February 13, 2023.

10.    As a result of Defendants' wrongful acts and misleading statements, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, and Section 27 of the Exchange Act, (15 U.S.C. § 78aa).

13.   Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b), Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Fidelity National is headquartered in this Judicial District.  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District, and many of the acts and omissions charged herein, including the dissemination of materially false and misleading information to the investing public, and the omission of material information, occurred in substantial part in this Judicial District.

14.   In connection with the acts, transactions, and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the U.S. Mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

15.   Plaintiff Palm Bay Police and Firefighters' Pension Fund is a public pension fund providing benefits for eligible police and firefighters in Palm Bay, Florida.  Plaintiff manages more than $230 million in assets on behalf of approximately 500 members.  As set forth in the accompanying certification, incorporated by reference herein, Plaintiff purchased Fidelity National common stock during the Class Period and suffered damages as a result of the federal

securities laws violations and false and/or misleading statements and/or material omissions alleged herein.

16.     Defendant Fidelity National is incorporated under the laws of Georgia, with its principal executive offices located in Jacksonville, Florida.  The Company's common stock is traded on the New York Stock Exchange (the "NYSE") under the ticker symbol "FIS."

17.     Defendant Gary Norcross ("Norcross") served as the Company's CEO from January 1, 2015 to January 1, 2023 and as Chairman of the Board of Directors from May 30, 2018 to January 1, 2023.

18.     Defendant James Woodall ("Woodall") served as the Company's Executive Vice President and CFO from May 18, 2013 to November 4, 2022.

19.     Defendant Stephanie Ferris ("Ferris") has served as the Company's President since February 8, 2022 and as CEO since January 1, 2023.  Ferris previously served as the Company's Chief Operating Officer from August 1, 2019 to September 2020 and as Chief Administrative Officer from September 2, 2021 to February 8, 2022.  Prior to that, Ferris served as CFO of Worldpay, and its predecessor, from April 26, 2016 until the closing date of the Worldpay acquisition by the Company on July 31, 2019.

20.     Defendants Norcross, Woodall, and Ferris (collectively, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of, *inter alia*, Fidelity National's quarterly reports, press releases, and presentations to securities

analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions with the Company and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false and misleading statements pleaded herein.

21.    The Company and the Individual Defendants are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background**

22.    Fidelity National provides technology products and services for financial institutions and businesses worldwide.  The Company was founded in 1968 as Systematics, and in 2003, was acquired by title insurance giant Fidelity National Financial, before being renamed Fidelity National Information Services.  Over the next several years, Fidelity National acquired several other financial technology firms, and through this growth by acquisition, Fidelity National

became a Fortune-500 company that now offers online ordering, delivery integration, and payment products.

23. The Company operates through 3 segments: Banking Solutions; Merchant Solutions; and Capital Market Solutions. Merchant Solutions, the segment consisting of the Worldpay business, serves merchants by enabling them to accept, authorize, and settle electronic payment transactions, and accounted for approximately 30% of the Company's total revenue in 2021.

24. On July 31, 2019, Fidelity National finished its acquisition of Worldpay, a provider of payment and technology services to merchants and financial institutions in the United States. After closing, Fidelity National began integrating Worldpay into the Company's Merchant Solutions business. The Worldpay acquisition was worth $43 billion – the Company's largest acquisition to date – and made Fidelity National the largest processing and payments company in the world. Indeed, in the press release announcing the Worldpay closing, then-CEO Norcross stated that "the Worldpay acquisition is a demonstrable proof point in our overall growth strategy. We are confident that our focus on innovating with purpose to advance the way the world pays, banks and invests will continue to deliver long-term value to our clients and shareholders." Specifically, Fidelity National called for an "organic revenue growth outlook of 6 percent to 9 percent through 2021, in conjunction with $700 million of total EBITDA synergies from the combination of revenue and expense opportunities over the next three years" as Worldpay was integrated.

25.    Fidelity National assured investors leading up to the Class Period that the Company's "revenue synergies" were increasing due to being ahead of schedule with Worldpay's integration process.  Indeed, in February 2020, just months after the Worldpay acquisition closed, the Company noted that one of its priorities for the year was to "seamlessly execute the Worldpay integration in order to achieve our revenue and cost synergy goals[,]" stating that "[w]e are already well ahead of schedule, and we'll look to further accelerate our momentum in 2020."

26.    Analysts set high expectations for Fidelity National, with Oppenheimer noting that the Company had increased its synergy targets, "demonstrating strong early cross-sell progress" and that the "combination is off to a strong start."  Similarly, analysts at Berenberg highlighted the fact that the Company "is 12 months ahead of its original integration plan for recent acquisition Worldpay" as "evidence that the company will outperform its synergy targets and accelerate organic growth."

### Defendants' Materially False and Misleading Statements Issued During the Class Period

27.    The Class Period begins on February 9, 2021, when Fidelity National held an earnings conference call after releasing its fourth quarter and full year 2020 results.  In his opening remarks, then-CEO Norcross highlighted that the Company had "made exceptional progress in integrating Worldpay" stating that Fidelity National:

made great progress with the Worldpay integration, remaining well ahead of plan and exited the year generating more than $200 million in revenue synergies and more than $750 million in cost synergies. With this impressive momentum, we are excited to build on our strengths as we look ahead to accelerating organic revenue growth in 2021.

28.    On March 22, 2021, Norcross participated in the Bank of America Securities Electronic Payment Virtual Symposium.  In response to a question about the Company's accelerating revenue growth, Norcross boasted about the benefits to the Company of having completed the integration of Worldpay, stating, "our cross-sell wins have been very strong coming out of the Worldpay integration."  Norcross later noted that Fidelity National was very confident that its merchant business "long term could be a double[-]digit grower," even though Worldpay historically had single-digit revenue growth.  Norcross also highlighted that "the fundamentals of putting the 2 companies together really has exceeded our expectations at this point.  We're well ahead of process."

29.    On May 6, 2021, Fidelity National held an earnings conference call after releasing its first quarter 2021 results.  On the call, Norcross pointed specifically to the "synergies with the Worldpay integration" as providing a "significant contribution" to the Company's increased financial guidance.

30.    On August 3, 2021, after announcing its second quarter 2021 results, the Company held an earnings conference call during which Norcross told analysts that "you're seeing us exceed our cross-sales and revenue synergies with the Worldpay integration."  In addition, Norcross noted the Company "had a

record quarter from a sales perspective" due in part to the "revenue synergies across the Worldpay integration efforts."

31.     On November 4, 2021, Fidelity National held an earnings conference call for its third quarter 2021 results.   In his opening remarks, Norcross highlighted that:

> Revenue synergies related to our Worldpay integration increased to $150 million in the quarter, bringing the total to $600 million on an annual run rate basis.  We remain on schedule to exceed $700 million exiting this year, beating our original target by 40%, while accomplishing this feat a year early.

Later on the call, then-CFO Woodall informed investors that the completed Worldpay integration allowed the Company to continue exploring more acquisitions, stating "[y]ou probably also saw some emphasis there as we round out and complete the Worldpay integration. . . . We are very focused on completing each integration before we move to the next.  So we feel good about where we're at on that integration."

32.     On November 15, 2021, Woodall participated in the Citi's 11th Annual FinTech Conference.   In response to a question of what some of Fidelity National's target areas for new acquisitions would be, Woodall explained that "in the short term, we're probably not looking at anything transformational.  We're just completing the Worldpay integration work here, just finishing it up."

33.     The next day, on November 16, 2021, Norcross and Woodall presented at the RBC Global Technology, Internet, Media and Telecom

Conference.  Norcross highlighted that "when you look at where we are on the Worldpay integration, we've got really Worldpay predominantly behind us now. We've got all our segments really hitting on all cylinders[.]"

34.    On February 15, 2022, during Fidelity National's earnings conference call for the fourth quarter and full year 2021, Norcross announced that the Company had "successfully completed the Worldpay integration nearly a year ahead of schedule, beating our initial revenue synergy target by 50% and more than doubling our initial expense synergy target," later emphasizing that the Company's sales team "has done an excellent job driving cross sales through the Worldpay acquisition."  In addition, as Norcross explained, "our success in revenue synergies with the Worldpay integration," will allow Fidelity National to "take advantage of a broader addressable market."

35.    On March 9, 2022, Norcross and Woodall participated in Wolfe Research's Fintech Forum.  In response to a question about what positively surprised him in 2021, Norcross said that Fidelity National:

> really successfully completed the Worldpay integration. We blew out any of our operating synergies going into that, whether it was on expense takeout or revenue. Revenue exceeded well over $700 million across sales. We ended up getting over $900 million of cost takeout. So we feel great about that integration and how that went.

36.    The statements referenced in ¶¶ 27-35 were materially false and/or misleading and failed to disclose material adverse facts about the Company's

business, operations, and prospects to make the statements made, in light of the circumstances under which they were made, not false and misleading.

37.     Specifically, Defendants misrepresented and/or failed to disclose to investors that: (1) the integration of Worldpay was not ahead of schedule; (2) the integration of Worldpay was not successfully completed during the Class Period; (3) the increases in revenue synergies were not driven by the Worldpay integration; and (4) as a result, Defendants' positive statements about the Company's financial guidance, business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## The Truth Begins To Be Revealed

38.     Despite the Company's repeated assurances that the Worldpay integration was "successfully completed," investors began to learn of Fidelity National's struggles when the Company announced the departures of its CEO and CFO.  First, on August 4, 2022, Fidelity National filed a Current Report on Form 8-K with the SEC announcing the Company's second quarter 2022 results. The 8-K included an announcement that Woodall planned to "step down" as Fidelity National's Corporate Executive Vice President and CFO effective November 4, 2022, and that Erik Hoag would be replacing him on that same day.

39.     On this news, Fidelity National's stock price dropped $7.56 per share, or more than 7 percent, from a closing price of $104.13 per share on August 3, 2022, to a closing price of $96.57 per share on August 4, 2022.  Despite

the executive turnover, during the Company's accompanying earnings conference call, then-President Ferris proclaimed that Fidelity National is "hugely successful in terms of driving revenue synergies on the Worldpay transaction."

40.    In addition, on October 18, 2022, the Company issued a press release announcing that Ferris, who was appointed President of the Company in February 2022, would become the new CEO effective January 1, 2023.  As a result, outgoing-CEO Norcross, who had been with the Company since 1988 and in the CEO role since 2015, would become Executive Chairman of the Board of Directors upon the transition.

41.    Along with executive departures, the impact of the failed Worldpay integration began to become clear to investors on November 3, 2022, when the Company announced disappointing results for the third quarter of 2022.  During the earnings conference call, Norcross announced that profit margins in the Merchant Solutions business "saw continued pressure in the quarter" resulting "in an overall adjusted EBITDA margin contracting 150 points year-on-year." Norcross explained "we are not pleased with the profitability performance of the business and are taking actions to address them."  In addition, the Company's new CFO, Eric Hoag, explained more specifically that the Company's Merchant Solutions segment suffered from a 430 basis-point margin contraction during the quarter.  However, despite the clear issues with Merchant Solutions, including Worldpay, when asked about the Company's other cross-selling projects, Norcross noted that the Company has been "simply taking the success that we

had with the Worldpay integration of cross-sales and amplifying that up to the next level."

42.    In response to these results, on the call, Baird analyst, David Koning, bluntly noted that "on margins . . . if we look first just at Merchant, it was close to 100% incremental margin in both 2020 and 2021.  And now this year it's closer to zero."

43.    Following the earnings conference call, analysts from Raymond James reported "a disastrous 3Q print that we can only hope was the kitchen sink and then some."  Also, in that same note, analysts highlighted they were "particularly disappointed by merchant growth[,]" writing that an "enterprise transformation program . . . is a much-needed step in the right direction" for Fidelity National.  Further, analysts at UBS reported that the Company's "results missed our and Street expectations driven by underperformance from Merchant Solutions[,]" noting that "[w]hile we were expecting some form of medium-term guidance reset, we were still anticipating to hear about a path back to high-single digits for Merchant Solutions, which did not occur, leading some investors to wonder if there may be structural problems."

44.    On this news, Fidelity National's stock price dropped $22.29 per share, or over 28% percent, from a closing price of $79.47 per share on November 2, 2022, to a closing price of $57.18 per share on November 3, 2022.

45.    Just weeks after the disappointing earnings release, on December 15, 2022, Fidelity National announced that it had initiated a "comprehensive

assessment of the Company's strategy, business, operations and structure" with a "focus on identifying and optimizing incremental revenue generation, margin improvement and cost reduction opportunities." Notably, the Company also announced that CEO Norcross would "depart" as CEO and a Board member earlier than anticipated – effective December 16, 2022 – and that he would not be appointed Executive Chairman of the Board as previously mentioned.

46.    Finally, before the markets opened on February 13, 2023, Fidelity National filed a Current Report on Form 8-K with the SEC announcing the Company's fourth quarter and full year 2022 results. The Form 8-K included a press release that stunned investors by disclosing that the Company would be getting rid of its Merchants Solutions business – namely Worldpay – and "recorded a non-cash goodwill impairment charge of $17.6 billion related to Merchant Solutions reporting unit in the quarter." This massive write-down constituted more than 40% of Fidelity National's purchase price for Worldpay just a few years earlier.

47.    Credit Suisse and Citigroup analysts downgraded Fidelity National stock in the wake of the news. Other analysts were critical of the Worldpay acquisition. Mizuho analysts stated that the spinoff meant that the acquisition of Worldpay in 2019 "was a huge failure," explaining that Fidelity National's merchant business has "deteriorated considerably since the merger[.]" Additionally, analysts at Morningstar blamed the spinoff on the poor integration of the Company's Merchant Solutions business, writing that Fidelity National's

"recent issues stem more from operational missteps and that the strategy behind the combination was not necessarily flawed from a long-term perspective." In a report titled "FIS: The Struggle is Real," Wells Fargo analysts reported "The $17.6B impairment charge and the volume growth in Merchant both stood out." Argus Research wrote "the unwinding of the large Worldpay acquisition is a black eye on the company's former strategy."

48.    On these revelations, the price of Fidelity National stock dropped $9.43 per share, or more than 12 percent, from a closing price of $75.43 per share on the prior trading day of February 10, 2023 down to a closing price of $66.00 per share on February 13, 2023.

## CLASS ACTION ALLEGATIONS

49.    Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class, consisting of all persons and entities that purchased Fidelity National common stock between February 9, 2021 and February 10, 2023, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

50.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through

appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Throughout the Class Period, Fidelity National common stock actively traded on the NYSE (an open and efficient market) under the symbol "FIS."  Millions of Fidelity National shares were traded publicly during the Class Period on the NYSE.  As of February 22, 2023, the Company had more than 591 million shares outstanding.  Record owners and other members of the Class may be identified from records maintained by Fidelity National or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

51.    Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

52.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests that conflict with those of the Class.

53.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether Defendants violated the Exchange Act by the acts and omissions as alleged herein;

(b)     whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(c)     whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, operations, and prospects of Fidelity National;

(d)     whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, operations, and prospects of Fidelity National;

(e)     whether the market price of Fidelity National common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

(f)     the extent to which the members of the Class have sustained damages and the proper measure of damages.

54.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.   Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this suit as a class action.

## UNDISCLOSED ADVERSE INFORMATION

55.    The market for Fidelity National's common stock was an open, well-developed, and efficient market at all relevant times.  As a result of the materially false and/or misleading statements and/or omissions particularized in this Complaint, Fidelity National's common stock traded at artificially inflated prices during the Class Period.  Plaintiff and the other members of the Class purchased Fidelity National's common stock relying upon the integrity of the market price of the Company's common stock and market information relating to Fidelity National and have been damaged thereby.

56.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Fidelity National's common stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Fidelity National's business, operations, and prospects as alleged herein.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its business, thus causing the Company's common stock to be overvalued and artificially inflated or maintained at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period directly or proximately caused or were a substantial

contributing cause of the damages sustained by Plaintiff and other members of the Class who purchase the Company's common stock at artificially inflated prices and were harmed when the truth was revealed.

## SCIENTER ALLEGATIONS

57.     As alleged herein, Defendants acted with scienter in that Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

58.     As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Fidelity National, their control over, receipt, and/or modification of Fidelity National's allegedly materially misleading statements and omissions, and/or their positions with the Company, which made them privy to confidential information concerning Fidelity National, participated in the fraudulent scheme alleged herein.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

59.     As a result of their purchases of Fidelity National securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

60.     In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Fidelity National who knew that the statement was false when made.

## **LOSS CAUSATION**

61.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss, *i.e.*, damages, suffered by Plaintiff and the Class.

62.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions and engaged in a scheme to deceive the market.  This artificially inflated the prices of Fidelity National's common stock and operated as a fraud or deceit on the Class.  When Defendants' prior misrepresentations, information alleged to have been concealed, fraudulent conduct, and/or the effect thereof were disclosed to the market, the price of Fidelity National's stock fell precipitously, as the prior artificial inflation came out of the price.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

63.     The market for Fidelity National stock was open, well-developed, and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose particularized in this Complaint, Fidelity National common stock traded at artificially inflated and/or maintained prices during the Class Period.  Plaintiff and other members of the Class purchased the Company's common stock relying upon the integrity of the market price of Fidelity National common stock and market information relating to Fidelity National and have been damaged thereby.

64.     At all times relevant, the market for Fidelity National common stock was an efficient market for the following reasons, among others:

(a)     Fidelity National was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Fidelity National filed periodic public reports with the SEC and/or the NYSE;

(c)     Fidelity National regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Fidelity National was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

65.     As a result of the foregoing, the market for Fidelity National common stock promptly digested current information regarding Fidelity National from all publicly available sources and reflected such information in Fidelity National's stock price.  Under these circumstances, all purchasers of Fidelity National stock during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices, and a presumption of reliance applies.

66.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded in Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business, operations, and prospects—information that Defendants were obligated to disclose during the Class Period but did not— positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of investment decisions.  Given

the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## COUNTS AGAINST DEFENDANTS

## COUNT I

### For Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

67.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

68.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Fidelity National common stock; and (iii) cause Plaintiff and other members of the Class to purchase Fidelity National stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

69.     Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of conduct that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Fidelity National common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  All Defendants are

sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

70.     Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Fidelity National's business, operations, and prospects, as specified herein.  Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Fidelity National's business, operations, and prospects, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Fidelity National and its business, operations, and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of conduct of business that operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

71.     Each of the Individual Defendants' primary liability and controlling person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company during the Class Period and a member of the Company's management team or had control

thereof; (ii) each of the Individual Defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development, and reporting of the Company's business, operations, and prospects; (iii) each of the Individual Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to, other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) each of the Individual Defendants was aware of the Company's dissemination of information to the investing public, which they knew and/or recklessly disregarded was materially false and misleading.

72.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Fidelity National's operating condition, business practices, and prospects from the investing public and supporting the artificially inflated and/or maintained price of its common stock.  As demonstrated by Defendants' overstatements and misstatements of the Company's business, operations, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in

failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

73.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Fidelity National common stock was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants or upon the integrity of the market in which the stock trades, and/or in the absence of material adverse information that was known or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class purchased Fidelity National common stock during the Class Period at artificially inflated prices and were damaged thereby.

74.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known of the truth regarding the problems that Fidelity National was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased their Fidelity National common stock, or, if they had purchased such common stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

75.    By virtue of the foregoing, Fidelity National and the Individual Defendants each violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

76.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### Against All Individual Defendants

77.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

78.    The Individual Defendants acted as controlling persons of Fidelity National within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions with the Company, participation in, and/or awareness of the Company's operations, and intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control,  directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.   Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by

Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

79.   In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

80.   As set forth above, Fidelity National and the Individual Defendants each violated § 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to § 20(a) of the Exchange Act.  As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## **PRAYER FOR RELIEF**

81.   WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

82.   Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

83.   Awarding Plaintiff and the other members of the Class damages in an amount that may be proven at trial, together with interest thereon;

84.    Awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

85.    Awarding such other relief as this Court deems appropriate.

## JURY DEMAND

86.    Plaintiff demands a trial by jury.

Dated: March 6, 2023                    Respectfully submitted,

**SAXENA WHITE P.A.**

By: */s/ Maya Saxena*
Maya Saxena (FL Bar No. 95494)
Joseph E. White, III (FL Bar No. 621064)
Lester Hooker (FL Bar No. 32242)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com

*Counsel for Plaintiff City of Palm Bay
Police and Firefighters' Pension Fund*

**KLAUSNER KAUFMAN JENSEN
 & LEVINSON**
Robert D. Klausner (FL Bar No. 244082)
Stuart A. Kaufman (FL Bar No. 979211)
7080 Northwest 4th Street
Plantation, FL 33317
Telephone: (954) 916-1202
bob@robertdklausner.com
stu@robertdklausner.com

*Additional Counsel for Plaintiff Palm Bay
Police and Firefighters' Pension Fund*

31

## **CERTIFICATION AND AUTHORIZATION**

I, Timothy Lancaster, on behalf of the Palm Bay Police and Firefighters' Pension Fund ("Palm Bay P&F"), hereby certify, as to the claims asserted under the federal securities laws, that:

1.      I have reviewed a complaint ("Complaint") prepared against Fidelity National Information Services, Inc. ("Fidelity National") alleging violations of the federal securities laws, and authorized its filing.  I am authorized in my capacity as Chairman of Palm Bay P&F to initiate litigation and to execute this Certification on behalf of Palm Bay P&F.

2.      Palm Bay P&F did not purchase the securities that are the subject of this action at the direction of counsel, or in order to participate in any action arising under the federal securities laws.

3.      Palm Bay P&F is willing to serve as a lead plaintiff and representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4.      Palm Bay P&F's transactions in Fidelity National common stock during the Class Period are set forth in the attached Schedule A.

5.      Palm Bay P&F has sought to serve and was appointed as lead plaintiff and representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification: *None*

6.      Palm Bay P&F has sought to serve as a lead plaintiff or representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification, but either withdrew its motion for lead plaintiff, was not appointed lead plaintiff, or the lead plaintiff decision is still pending: *None*

7.      Palm Bay P&F will not accept any payment for serving as a representative party on behalf of the Class beyond Palm Bay P&F's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___6___ day of March, 2023.

*Palm Bay Police and Firefighters'*
*Pension Fund*

_____
Timothy Lancaster, Chairman

1

**SCHEDULE A**
**Palm Bay Police and Firefighters' Pension Fund**
**Transactions in Fidelity National Information Services, Inc.**

| Common Stock Purchases | | | Common Stock Sales | | |
|---|---|---|---|---|---|
| **Date** | **Shares** | **Price** | **Date** | **Shares** | **Price** |
| 07/11/22 | 5,705 | $93.95 | 02/09/21 | 23 | $132.69 |
| 07/11/22 | 7,516 | $93.95 | 02/09/21 | 42 | $132.69 |
| 10/07/22 | 257 | $76.87 | 02/10/21 | 39 | $132.14 |
| 10/07/22 | 331 | $76.87 | 02/10/21 | 58 | $132.14 |