IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PALM BAY POLICE AND
FIREFIGHTERS' PENSION FUND,
individually and on behalf of
all others similarly situated,

     Plaintiff,

v.                     Case No. 3:23-cv-252-TJC-PDB

FIDELITY NATIONAL INFORMATION
SERVICES, INC., GARY NORCROSS,
JAMES WOODALL, and STEPHANIE
FERRIS,

     Defendants.
_____

NEBRASKA INVESTMENT COUNCIL,
individually and on behalf of
all others similarly situated,

     Plaintiffs,

v.                     No. 3:23-cv-00504-BJD-PDB

FIDELITY NATIONAL INFORMATION
SERVICES, INC., GARY NORCROSS,
JAMES WOODALL, and STEPHANIE
FERRIS,

     Defendants.
_____

TELEPHONIC STATUS CONFERENCE
BEFORE THE HONORABLE TIMOTHY J. CORRIGAN
UNITED STATES DISTRICT JUDGE
Jacksonville, Florida
Courtroom 10D
June 5, 2023
2:37 p.m.

(Proceedings recorded by mechanical stenography; transcript produced by computer.)

A P P E A R A N C E S

COUNSEL FOR PLAINTIFFS:

**DAVID SCOTT OLIVER**, **ESQ**.
GrayRobinson, PA
301 East Pine Street, Suite 1400
Orlando, Florida  32801

**MICHAEL P. CANTY**, **ESQ**.
**FRANCIS PAUL McCONVILLE**, **ESQ**.
Labaton Sucharow LLP
140 Broadway
New York, New York  10005-1108

COUNSEL FOR DEFENDANTS:

**ROBERT ERIC BILIK**, **ESQ**.
McGuireWoods, LLP
50 North Laura Street, Suite 3300
Jacksonville, Florida  32202

**HILLE R. SHEPPARD**, **ESQ**.
**JOHN M. SKAKUN**, **III**, **ESQ**.
Sidley Austin, LLP
One South Dearborn
Chicago, Illinois  60603

COURT REPORTER:

Shannon M. Bishop, RDR, CRR, CRC
221 North Hogan Street, #150
Jacksonville, Florida  32202
Telephone:  (904)549-1307
dsmabishop@yahoo.com

P R O C E E D I N G S

June 5, 2023                                    2:37 p.m.

- - -

THE COURT:  Good afternoon.  This is *Palm Bay Police and Fire versus Fidelity* and *Nebraska Investment Council versus Fidelity*, 3:23-cv-252 and 3:23-cv-504.

I'm told that Mr. Oliver, Mr. McConville, and Mr. Canty are on the line for the plaintiff.

Mr. Bilik, Sheppard, and Mr. -- is it Skakun, if I'm saying it correctly, are on the line for the defendants.

We're here today for a status conference requested by me.  I wanted -- the first thing I wanted to do is -- originally I had -- in the *Nebraska* case there didn't -- there didn't appear to be any counsel for defendants appearing, but I'm told -- I guess there's a pro hac in those cases that just got filed.

Mr. Bilik, are you counsel in those cases as -- in the *Nebraska* case as well?

MR. BILIK:  Yes, Your Honor.  I understand I will be.  I have not filed a notice of appearance in that case yet.

THE COURT:  Okay.  Well, this morning there was a pro hac vice filed by a bunch of folks.  Is it all the same folks?  Is it going to be -- in other words, is the counsel for the defendants going to be the same in both cases, Mr. Bilik?

MR. BILIK:  That's my understanding, Your Honor, but

I have specially admitted attorney Hille Sheppard from Sidley Austin who may have more information.

Ms. Sheppard.

MS. SHEPPARD:  Yes.  Good afternoon, Your Honor.  Hille Sheppard for the defendants.

My belief is that the *Nebraska* case will be consolidated with the *Palm Bay* case.  And under the Private Securities Litigation Reform Act, you will appoint one lead plaintiff that will go forward in both cases, and, really, the *Nebraska* case probably falls away and the lead case becomes the *Palm Bay* case.

So, yes, we have not in the *Nebraska* case, but we will be representing the defendants in -- in the consolidated securities litigation going forward.

THE COURT:  All right.  So that -- so the answer to my question is that the defendants -- that Fidelity will be represented by the same lawyers in both cases; and if it gets consolidated, then it just all merges together.  That makes sense.

Okay.  All right.  So I just wanted to -- I couldn't quite -- the *Palm Bay* case got filed first.  And that was filed by Saxena White and Mr. Klausner, who I've had before.

And then the *Nebraska* case was filed.  And that was filed by Mr. Oliver and -- is it Labaton?  Is that how you say the first name of the firm?

And then there's an unopposed -- or there's a motion to consolidate the cases and to appoint the -- GrayRobinson as the liaison and Labaton as the lead plaintiff.

And that's going to be okay with me.  I just -- I wanted to make sure I understood -- do you -- Mr. Oliver, are you the one speaking today?  I'm not sure who's going to speak for the plaintiffs.

Are you in contact with the Saxena White firm and Mr. Klausner's firm?  And is this something that they've agreed to, or they just didn't say anything so that's deemed to be agreement?  I'm a little surprised they're not on the call.  So can you kind of tell me what -- where we stand with that.

MR. OLIVER:  Judge, this is -- good afternoon.  This is David Oliver of the GrayRobinson firm.  I'd like to introduce by phone Michael Canty and Francis McConville of the Labaton firm.

And I would like for them to address your question, because I have not personally had those communications with counsel for Palm Bay.

THE COURT:  Okay.

MR. OLIVER:  Perhaps they can provided additional information.  They have both moved for unopposed motions for admission pro hac vice.

THE COURT:  Yeah.  And I'm sure -- if they're in order, I'm sure those will get granted.

So who's going to speak?

MR. CANTY:  Your Honor, good afternoon.  This is Michael Canty from Labaton Sucharow.

With respect to the Palm Bay counsel, they did not file for lead plaintiff with their client in this case.  It was an unopposed application by Labaton on behalf of the Nebraska Investment Council, North Carolina Retirement Systems, and North Carolina Supplemental Retirement Plans.

THE COURT:  Well, so you haven't talked to them at all?  Is that --

MR. CANTY:  My understanding --

THE COURT:  Is that the way this works?

MR. CANTY:  Your Honor -- yes, Your Honor.  My colleague Mr. McConville could probably speak more definitively to this.  But my understanding is they did not move based on the lawsuit that we had proposed with Nebraska alone.

And then, obviously, the Nebraska and North Carolina, under the PSLRA, is -- the presumptive lead appointment goes to the -- the plaintiff with the largest loss.  Obviously, that's a presumption that can be rebutted.

Nobody else filed for that lead plaintiff motion.  So I believe their understanding was that we would be appointed -- excuse me, Nebraska and North Carolina would be appointed and, therefore, Labaton Sucharow's counsel would be granted.

THE COURT:  All right.  Well, so Mr. Oliver passed it

to you and now you're passing it to Mr. McConville.  I'm not sure -- is it Ms. or Miss -- I'm not sure which Francis it is.

MR. CANTY:  It's Mr. McConville.  And I think he'll just corroborate, but I just want to make sure I didn't miss anything.  Your Honor, he's the subject matter expert when it comes to lead plaintiff motions.

THE COURT:  Okay.  Is that a -- is that a thing?  You're -- Mr. McConville, you specialize in getting unopposed motions for lead counsel approved?

MR. McCONVILLE:  Your Honor, good afternoon.  This is Francis McConville.  My job would be a lot easier if every motion I filed was unopposed.

But in this particular instance, when Palm Bay -- counsel for Palm Bay filed their initial complaint under the prevailing federal statute, the PSLRA, the Private Securities Litigation Reform Act, they put out a notice basically saying, "You, as class members, have 60 days to file for lead plaintiff."

And on the 60th day, as my colleague, Mr. Canty, mentioned, Nebraska, North Carolina filed for lead plaintiff.

No one else filed for lead plaintiff, so -- at which point they've essentially given up their opportunity to do so.  And so when we say "unopposed," it's unopposed now.

Leading into the motion, we didn't know whether or not Saxena White or anyone else would be filing for lead

plaintiff.  We were pleased as our motion was filed and it was unopposed, because we're very much looking forward to litigating this case.

And that's currently how it stands.  We have not heard from the Saxena White firm, but, like I said, based on their failure to file the motion for lead plaintiff, they've effectively waived their right to do so.

THE COURT:  Okay.  I guess -- I just -- I would have thought somebody would have e-mailed or picked up the phone and made sure that that was right.

I mean, the Saxena firm and the Klausner firm litigate in our court all the time, and they -- you know, they're perfectly capable of handling a case like this.  And so it just seems a little odd that nobody talks to anybody.  But if -- you know, if that's the way this works, I guess that's the way it works.

So what happens to them, Mr. McConville?  Do they -- are they -- are they just out of the case now?  I mean, when they're lead plaintiff --

MR. McCONVILLE:  Correct.

THE COURT:  -- when you're -- if you're lead plaintiff, does that mean they have no role to play whatsoever?  Are they out of the case?

MR. McCONVILLE:  That is correct.  They -- they did not submit an application to be appointed as lead counsel, or

an investor on their end to be appointed as lead plaintiff. And there's only one appointment of lead plaintiff/lead counsel. And just based on the way that the -- this case has progressed, they will have no role. That's correct.

THE COURT: And they don't get a fee or anything either?

MR. McCONVILLE: I can't speak to whether or not they'll submit an application at the end of this case following their role in the complaint. I believe that's their right to do so.

But after the lead plaintiff appointment occurs, they will have no authority to act on behalf of the class. And so any activity would not be able to generate a fee.

THE COURT: Okay. Well, if that's the way it works, that's the way it works. I just -- I wanted to make sure that -- I mean, I've had cases like this before and I've appointed lead plaintiffs before. I've also had litigated lead plaintiff -- you know, where two different firms thought they should be the lead plaintiff.

And I just thought it was a little bit odd that the first filed case, filed by what I consider to be reputable law firms -- that they filed this case and then we just never hear from them again and they just fade into oblivion. But if that's the way it works, I guess that's the way it works.

MR. McCONVILLE: Yes, that is correct, Your Honor.

That is how it works.

THE COURT:  Okay.  All right.  All right.  Then I'm okay with it.

And I think what I would like to do is -- since y'all are the subject matter experts on unopposed motion for lead plaintiff and consolidation, I'm going to go ahead and ask you to just submit a proposed order on the -- on the motion.

And, you know, I could make -- I could make it up myself, but I'm just going to ask you to go ahead and submit a proposed order that I can enter that appoints you lead plaintiff -- lead plaintiffs and lead counsel, and that also consolidates the cases.

So who -- I don't know who I'm talking to, but, Mr. McConville or Mr. Canty, Mr. Oliver, how long before I would get a proposed order?

MR. McCONVILLE:  Your Honor, we could submit that within the next 24 hours.

THE COURT:  Who just spoke?

MR. McCONVILLE:  Sorry.  This is Francis McConville from Labaton.

THE COURT:  Okay.  Some of the phone connections here are not the best.

All right.  So -- well, 24 hours is fine.  If you submit it to me this week, I'll try to get it signed off on this week.  If not, there might be a little bit of a delay.  So

the sooner you get it to me, the better -- the better off we are.

And, secondly, as long as I've got you on the -- on the call -- and I'll start with the plaintiff's side and then I'll talk to Mr. Bilik, if you're the one speaking today, or whoever is going to speak for the defendants.

And I take it, Mr. Bilik, that your -- your folks don't -- you have no basis to object to the consolidation or the appointment of lead plaintiff and lead counsel, and you -- you're satisfied for me to do that?

Is that correct?

MR. BILIK:  Yes, Your Honor.  That's my understanding.  And Ms. Sheppard from Sidley Austin will be speaking substantively beyond that.  But that's my understanding.

THE COURT:  All right.  Ms. Sheppard, is that --

MS. SHEPPARD:  Your Honor, this is -- yes, that's correct.  We take no position on the -- well, we agree it should be consolidated, the two cases.

THE COURT:  Okay.

MS. SHEPPARD:  But we take no position on the appointment of lead plaintiff or lead counsel.

THE COURT:  And, by the way, Ms. Sheppard -- I guess you would be the one to know this, or your side -- are there any other suits out there about this same subject matter, or

are these going to be the only two, as far as you know?

MS. SHEPPARD:  As far as I know, Your Honor, these are the only two.  And under the Private Securities Litigation Reform Act, I think it was incumbent on anyone who wanted to file a suit to do so within the first 60 days after the *Palm Bay* case was filed, because, Your Honor -- you know, because the lead plaintiff's applications were due within the 60 days under the PSLRA.

THE COURT:  All right.  So we're not expecting any other suits, then?

MS. SHEPPARD:  No.

THE COURT:  Okay.  All right.  So whoever wants to speak for the plaintiff, what -- what case management do I need to do at this point, or what -- where -- where do we stand?  I can't even recall -- I don't think the -- I don't think the complaints have even been responded to.

Let me start with this.  Are the plaintiffs intending to -- if we consolidate the cases, are you intending to file an amended complaint, or would you just have the two stand side by side?  And then I take it, then, the defendants would be given an opportunity to respond.

Have you -- have you finished service of the -- did I hear there hadn't been service in the second case?

MR. CANTY:  Your Honor, this is Michael Canty from Labaton.  I think I can answer your questions.  Pursuant to the

order that you entered into, there was a tentative schedule set for court-appointed lead plaintiff to file an amended or consolidated complaint within 60 days after being appointed lead plaintiff.

The defendants would then have 60 days to file a motion to dismiss, and then lead plaintiff would then have 60 days to respond to that motion to dismiss, and then the defendants would have 45 days to file a reply in support of their motion to dismiss.

The next paragraph of that order says, though, after the (interruption in audio) lead plaintiff counsel's regarding the -- may move the court for entry of an opposed amended schedule within 14 days.

With the Court's permission, may I suggest that we provide you the order appointing Labaton and Nebraska and North Carolina within 24 hours, and then within the next 14 days we will endeavor to coordinate with defense counsel.

I don't suspect this schedule is a problem, but I just -- we didn't enter into this order with them.  So we would like to just confer with defense counsel to make sure that those dates work.

And, in fact, it may be beneficial if we put hard dates in a proposed order to the Court for us to file our amended complaint, and all of the other motions that are -- that trigger off that filing.

THE COURT:  Okay.  That's fine.

Now, we actually didn't enter that order.  We -- the endorsed order that was entered on May 1st in the *Palm Bay* case granted the motion to stay the filing of the case management report, relieved the parties of their obligations to file a case management report, and then said the Court will set a schedule after appointing the lead plaintiff.

So I know -- if you're telling me that you-all proposed a -- a schedule, I do recall that, but I don't think we actually adopted it.

So I think it makes sense --

MR. CANTY:  My apologies, Your Honor.

THE COURT:  That's all right.  I think it makes sense for -- once we appoint you-all as the lead counsel and lead plaintiff, it makes sense for you to confer with the defendants and submit a proposed -- a joint proposed schedule to me.  And 14 days is okay with me.

But, Ms. Sheppard, is that -- is that acceptable to you-all?

MS. SHEPPARD:  It is, Your Honor.  And, you know, we -- we do still propose the schedule that was in that original motion.

THE COURT:  Okay.

MS. SHEPPARD:  I understand that Your Honor did not -- did not enter it, but we think that one still makes

sense.  And I will have to confer with the plaintiff's counsel, however.

THE COURT:  Okay.  That's fine.  I think -- and I agree that -- I like hard dates in my orders, so if you -- so what we'll do is this, I'll -- if you submit a lead counsel/lead plaintiff order -- consolidation order to me this week, as early in the week as you can, I will try to sign it this week, because, as I said, there could be a delay if I can't do it this week.

And then why don't I -- let me get a calendar here.  Why don't I just set a hard date for the parties to -- assuming I'm going to enter this consolidation order by the end of this week, why don't the parties jointly submit a proposed schedule or scheduling order, whichever way you want to do it, and include hard dates in it, but submit that joint order by June 23rd, so that would be 14 days after June 9th, which is the end of this week.

Would that work, Mr. Canty?

MR. CANTY:  Yes, Your Honor.  Thank you.

THE COURT:  All right.  Ms. Sheppard, is that okay with you?

MS. SHEPPARD:  Yes, that works.  Thank you.

THE COURT:  Okay.  So, basically, if I'm just -- make sure we've got our ducks in a row here.  So I'm going to be receiving a proposed order this week that would consolidate the

cases, which would appoint the lead plaintiffs, and would also appoint the liaison counsel and the lead counsel.

And then by June 23rd I'll receive a joint proposal for the entry of a scheduling order that schedules out motion practice and whatever else is -- is -- I'm going to get, and -- and then -- and then, based on that, we'd be able to enter a schedule -- scheduling order and -- and then the matter would proceed from there.

Mr. Canty, is there anything else that we need to do today?

MR. CANTY:  Nothing from the plaintiffs.  Thank you, Your Honor.

THE COURT:  Ms. Sheppard?

MS. SHEPPARD:  Your Honor, just one -- one point of process.  Under the Private Securities Litigation Reform Act there is a stay of all discovery until after there is a ruling on the motion to dismiss.

So I think the only schedule you would need to be entering is the briefing schedule on -- or the schedule for filing of the amended complaint and then the briefing schedule on the motion to dismiss.

THE COURT:  That's fine.  I mean, I'll just take whatever schedule you give me.  And if you tell me that it's -- there's a stay by operation of law, then so be it.

MS. SHEPPARD:  All right.  Thank you, Your Honor.

THE COURT:  Okay.  All right.  Anything else from anybody?

MR. CANTY:  No, thank you, Your Honor.

MS. SHEPPARD:  No, thank you.

THE COURT:  Very good.

All right.  Thank you all.  I'll look forward to getting these orders, and we'll go from there.

All right.  We're in recess.

(The telephonic proceedings concluded at 2:59 p.m.)

- - -

18

## CERTIFICATE

UNITED STATES DISTRICT COURT     )
                                 )
MIDDLE DISTRICT OF FLORIDA       )


     I hereby certify that the foregoing transcript is a true and correct computer-aided transcription of my stenotype notes taken at the time and place indicated herein.


     DATED this 7th day of June, 2023.



          s/Shannon M. Bishop
          Shannon M. Bishop, RDR, CRR, CRC