# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

|  |  |
|---|---|
| IN RE FIDELITY NATIONAL INFORMATION SERVICES, INC. SECURITIES LITIGATION | No. 3:23-cv-00252<br><br>Honorable Timothy J. Corrigan<br><br>Honorable Patricia D. Barksdale |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
## THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................1

ARGUMENT ...................................................................... 2

    I.    **The Section 10(b) Claims Relating To Revenue Synergies, Market Share, and Cross Sales Have Been Abandoned Or Otherwise Fail.** ...................................................... 2

        A.    **The Opposition Confirms There Are No False Or Misleading Statements**.................................... 2

            1.    **The May 2020–May 2021 Quantitative Statements About Revenue Synergies Are Not Actionable.**.................................... 2

            2.    **The February and March 2022 Quantitative Statements About Cross Sales Are Not Actionable.**.................................... 5

            3.    **Plaintiffs Abandon Two Qualitative Statements, And Their Arguments About The Others Fail.** ......... 6

        B.    **The Opposition Confirms There Is No Scienter.**............. 6

        C.    **The Opposition Confirms There is No Loss Causation**........................................................ 9

    II.    **The Goodwill Statements Should Be Dismissed.** ................... 11

        A.    **Plaintiffs' Theories of Falsity Fail**................................. 11

        B.    **Plaintiffs' Arguments Do Not Give Rise To A Strong Inference Of Scienter.**....................................................14

        C.    **The Opposition Waives Any Argument That The August 4 and November 3, 2022 Disclosures Show Loss Causation.**..........................................................15

CONCLUSION ....................................................................15

i

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Carvelli v. Ocwen Financial Corp.*,
    934 F.3d 1307 (11th Cir. 2019) ......................................................................6, 11

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
    2018 WL 2382600 (S.D.N.Y. May 24, 2018) ................................................... 13

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
    856 F.3d 605 (9th Cir. 2017) ............................................................................. 13

*Dudley v. Haub*,
    2013 WL 1845519 (D.N.J. Apr. 30, 2013) ........................................................ 14

*Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*,
    270 F.3d 645 (8th Cir. 2001)............................................................................. 14

*In re Immucor Inc. Sec. Litig.*,
    2006 WL 3000133 (N.D. Ga. Oct. 4, 2006)........................................................8

*Jackson v. Abernathy*,
    960 F.3d 94 (2d Cir. 2020) ..................................................................................8

*Kinnett v. Strayer Educ., Inc.*,
    2012 WL 933285 (M.D. Fla. Jan. 3, 2012) ....................................................... 10

*Lopez v. CTPartners Exec. Search Inc.*,
    173 F. Supp. 3d 12 (S.D.N.Y. 2016) ................................................................. 12

*MacPhee v. MiMedx Grp., Inc.*,
    73 F.4th 1220 (11th Cir. 2023)............................................................................9

*Metzler Inv. GmbH v. Corinthian Coll., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ......................................................................... 10

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013) ...........................................................................9

*Mild v. PPG Indus., Inc.*,
    2018 WL 6787351 (C.D. Cal. Dec. 21, 2018).....................................................8

*Mizzaro v. Home Depot, Inc.*,
    544 F.3d 1230 (11th Cir. 2008) .............................................................. *passim*

*In re Nielsen Holdings PLC Sec. Litig.*,
   510 F. Supp. 3d 217 (S.D.N.Y. 2021) ................................................................. 12

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015) ...................................................................................................11

*In re Omnicom Grp., Inc. Sec. Litig.*,
   2005 WL 735937 (S.D.N.Y. Mar. 30, 2005)..................................................... 13

*In re Optionable Sec. Litig.*,
   577 F. Supp. 2d 681 (S.D.N.Y. 2008) .............................................................. 12

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
   774 F.3d 598 (9th Cir. 2014) ............................................................................. 10

*Police & Fire Ret. Sys. of the City of Detroit v. Axogen, Inc.*,
   2021 WL 1060182 (M.D. Fla. Mar. 19, 2021)...................................................11

*Rosenberg v. Gould*,
   554 F.3d 962 (11th Cir. 2009) ...........................................................................15

*In re TECO Energy, Inc. Sec. Litig.*,
   2006 WL 845161 (M.D. Fla. Mar. 30, 2006) ................................................... 10

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) (quoted at Opp. 34)........................................................ 7

*Theodore v. Purecycle Techs., Inc.*,
   2022 WL 20157415 (M.D. Fla. Aug. 4, 2022).................................................8

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
   475 F.3d 824 (7th Cir. 2007)............................................................................. 10

*In re Tupperware Brands Corp. Sec. Litig.*,
   2023 WL 5091802 (11th Cir. Aug. 8, 2023) ............................................ *passim*

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
   2015 WL 3755218 (E.D. Pa. June 16, 2015) ....................................................9

*In re Wet Seal Inc. Sec. Litig.*,
   518 F. Supp. 2d 1148 (C.D. Cal. 2007)............................................................ 12

*Zwick Partners, LP v. Quorum Health Corp.*,
   2018 WL 2933406 (M.D. Tenn. Apr. 19, 2018) .............................................. 13

## **<u>INTRODUCTION</u>**

Plaintiffs' Opposition (Dkt. 57, "Opp.") is telling for what it does not say. Through silence, it abandons many of the claims and confirms that the rest fail.

***First***, the Court should dismiss all claims against Ferris and Warren. The Opposition makes no arguments whatsoever about the only statement by Ferris (*see* Dkt. 46, the "Complaint" or "AC," ¶ 232), and makes no arguments specific to Warren – other than listing him as a party, Plaintiffs do not even mention him. In addition, the Opposition abandons the allegations about the market share statement (*id.* ¶ 207) and the three statements in FIS's press releases (*id.* ¶ 184, 192, 197). The Court should dismiss the claims based on those statements, too.

***Second***, the Opposition fails to address the Eleventh Circuit's decisions in *Mizzaro* and *Tupperware* (and other key case law). Those authorities make clear that Plaintiffs' allegations attributed to their confidential witnesses ("CWs") cannot show falsity for the statements about revenue synergies or cross sales. Nor can their allegations about the two unidentified sources mentioned in the December 2022 New York Times article show falsity for the goodwill statements.

***Third***, the Opposition ignores key facts that fatally undermine Plaintiffs' claims. Despite asserting that statements quantifying FIS's revenue synergies or cross sales were false, the Opposition says nothing about the amount of revenue synergies or cross sales that FIS actually achieved. It also fails to account for the synergy validation process, which negates the claims: synergies were reviewed by the Integration Management Office, validated by an external third party (PwC),

and reviewed and approved by two committees of FIS's Board. The Opposition likewise fails to account for the key facts showing the implausibility of Plaintiffs' allegations about goodwill: FIS's financial statements were audited by an independent auditor (KPMG), there was no restatement, and non-party Erik Hoag, the Company's CFO at the time, signed the Form 10-Q containing the 3Q22 goodwill statements, thus conveying his opinion that they were accurate.

The Court should dismiss the Complaint with prejudice.

## ARGUMENT

### I.    The Section 10(b) Claims Relating To Revenue Synergies, Market Share, and Cross Sales Have Been Abandoned Or Otherwise Fail.

The Opposition makes no arguments about Ferris's only statement (AC ¶ 232), the statement about market share (*id.* ¶ 207), or the statements in FIS press releases (*id.* ¶¶ 184, 192, 197). Claims based on those statements are thus waived and should be dismissed.

The remaining statements about revenue synergies and cross sales also fail.

#### A.    The Opposition Confirms There Are No False Or Misleading Statements.

##### 1.    The May 2020–May 2021 Quantitative Statements About Revenue Synergies Are Not Actionable.

The Complaint challenges five statements that quantified the amount of revenue synergies FIS achieved each quarter. AC ¶¶ 184, 186, 188, 190, 192. As Defendants explained in their Motion, *none* of the confidential witnesses claims these amounts were inaccurate. Dkt. 55 ("MTD") at 15–16. In fact, the Opposition says *nothing* about any specific amount of revenue synergies. Instead, it asks

2

the Court to infer these amounts were overstated by some unspecified amount for two reasons. Both are meritless.

*First*, Plaintiffs rely on CW4, who alleges that FIS defined synergies too broadly by including "any new business obtained by Worldpay following the acquisition." Opp. 4; *see also id.* at 16–18 (citing AC ¶ 103). CW4's allegations are insufficient under *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230 (11th Cir. 2008), and *In re Tupperware Brands Corp. Securities Litigation*, 2023 WL 5091802 (11th Cir. Aug. 8, 2023). Those cases require Plaintiffs to "fully describe the foundation or basis of the confidential witness's knowledge," including by specifying "the position(s) held, the proximity to the offending conduct, and the relevant time frame." *Tupperware*, 2023 WL 5091802, at *5. The Opposition ignores this test, which requires "particularized facts" showing that CW4 was "familiar with [the company's] financial reporting" in the specific "time frame" of the challenged statements. *Id.* at *6–7 (rejecting CW allegations and affirming dismissal with prejudice); *see also Mizzaro*, 544 F.3d at 1248–50 (same).

CW4 does not meet these requirements. She worked only on the UK SMB team. AC ¶ 103. There are no allegations showing she would be familiar with **Company-wide** financial reporting. *See id.* Additionally, as the Motion noted, no allegations show that CW4's assertions "relate to the 2020–2021 time period when the synergy statements were made." MTD 16. Plaintiffs respond that it is "clear" that CW4 was "employed at the time of the May 2021 statement." Opp. 17 (citing AC ¶ 85). Not only is that fact not alleged (AC ¶ 85), it misses the point:

3

regardless of when CW4 was employed, no allegations show that her assertions about synergies relate to the 2020–2021 time frame.

Plaintiffs argue that the Court should disregard these gaps in their allegations because CW4 is "corroborated by CW11." Opp. 17 (citing AC ¶ 104). Not so. CW11's narrow assertions are limited to what CW11 personally considered to be a synergy for a single "initiative in 2022" – not for the Company as a whole, and not until after the challenged statements. AC ¶ 104. Moreover, CW11's description of synergies **contradicts** CW4's: rather than agreeing that revenue synergies included "any new business" (*id.* ¶ 103), CW11 says they included "any **incremental** new business" – *i.e.*, business that FIS would not have had but for its combination with Worldpay (*id.* ¶ 104 (emphasis added)). That is the same definition of revenue synergies that Plaintiffs suggest the Company should have used – *i.e.*, "**additional** revenues obtained after an acquisition that the two companies could not have achieved alone." Opp. 15.

**Second**, Plaintiffs argue that the revenue synergy amounts must have been overstated because, according to CWs, "hardly any cross-selling occurred." *Id.* at 4; *see also id.* at 13–14. Plaintiffs' narrow focus on cross sales is a distraction. As they elsewhere admit, revenue synergies included revenue not only from cross sales, but also from "leveraging FIS's brand, existing customers, or presence in a new territory." *Id.* at 18 (citing AC ¶ 193). Allegations about cross sales do not show that the revenue synergy numbers were false. Moreover, as explained next, the CW allegations about cross sales should receive no weight.

### 2. The February and March 2022 Quantitative Statements About Cross Sales Are Not Actionable.

Although Plaintiffs claim that two statements about FIS exceeding $700 million in cross sales in 2021 were false, AC ¶¶ 209, 218, the Opposition says ***nothing*** about the quantity of cross sales that FIS actually achieved. It instead asks the Court to infer that the $700 million figure was overstated because eight low-level confidential witnesses anecdotally observed that "hardly any" cross selling occurred. Opp. 13 (citing AC ¶¶ 65–76). Those arguments fail.

**CW3:** CW3 was an Enterprise Sales Executive who oversaw a few dozen accounts at FIS. AC ¶ 45. According to the Opposition, CW3 corroborates Plaintiffs' claims because she recalled that "FIS had a different CRM [*i.e.*, customer relationship management system] than Worldpay" and "her colleagues had no clue what they were doing." *Id.* ¶ 72 (cited in Opp. 14); *see also id.* ¶¶ 93–94. Those assertions say nothing about cross sales, much less the volume of cross sales that FIS achieved in 2021.

**CW9:** CW9 says nothing about cross sales either. *See id.* ¶¶ 51, 76 (cited in Opp. 14). And as Plaintiffs acknowledge, CW9's role was limited: she "attended monthly meetings" that covered lines of business contributing to 8% of FIS's total annual revenue. *Id.* ¶ 76; *see also* Opp. 19. Plaintiffs allege no reason why CW9 would have familiarity with the calculation of Company-wide cross sales.

**CWs 1, 2, 4, 5, 7, 8:** Plaintiffs rely on allegations about six other CWs. As Defendants explained, those six fail to support falsity for these two challenged

statements under *Mizzaro* and *Tupperware*. MTD 21–22. The Opposition does not even attempt to address those controlling decisions. *See* Opp. 13–14.

### 3. Plaintiffs Abandon Two Qualitative Statements, And Their Arguments About The Others Fail.

As noted above, the Opposition abandons Ferris's statement that FIS was "hugely successful in terms of driving revenue synergies" (AC ¶ 232). The other three qualitative statements relating to revenue synergies or cross sales (*id.* ¶¶ 195, 197, 205) should also be dismissed because they are puffery.

Plaintiffs do not dispute that the statement about "strong cross-selling performance" in FIS's press release (*id.* ¶ 197) is puffery. Instead, they address only the two statements made at investor conferences on June 10 and November 16, 2021, arguing that they cannot be puffery because they related to the Worldpay acquisition and the acquisition was "extremely important." Opp. 21. But whether a statement relates to an "important" topic is not the test under *Carvelli v. Ocwen Financial Corp.*, 934 F.3d 1307 (11th Cir. 2019) – a controlling decision that Plaintiffs fail to address. Instead, statements are puffery if they are "vague, generalized, and optimistic comments" that investors would not view as "moving the investment-decision needle." *Id.* at 1320. The statements at these investor conferences – *i.e.*, about Worldpay "exceed[ing] our expectations" and segments "hitting on all cylinders" (AC ¶¶ 195, 205) – are puffery under that test.

### B. The Opposition Confirms There Is No Scienter.

In addition to making no scienter arguments about Ferris, the Opposition fails to address corporate scienter, and thus waives Plaintiffs' challenge to the

6

three statements made by FIS in its press releases (*id.* ¶¶ 184, 192, 197). Those statements should thus be dismissed. The Opposition also cannot save Plaintiffs' flawed scienter theories for Norcross and Woodall.

**Bonuses.** Plaintiffs argue that the Court should infer from Norcross's and Woodall's bonuses that they intended to defraud investors about revenue synergies and cross sales. Opp. 34–35. But Plaintiffs' own allegations negate such an inference because there is no plausible (let alone strong) basis to infer that Norcross or Woodall would or could have "manipulated" the rigorous process through which synergies were independently validated. As the Complaint acknowledges – but the Opposition tellingly fails to address – synergies were "initially validated by the FIS Integration Management Office," and next were "reviewed and validated by an independent accounting firm, PwC." AC ¶ 268 n.26. After that, they were reviewed and approved by the Audit Committee and the Compensation Committee of FIS's Board of Directors. Dkt. 55-4, MTD Ex. C (FIS's 2020 proxy statement).[1] These groups have never indicated that the reported synergies were wrong. Considering these allegations holistically, it is clear that these bonuses do not support a strong inference of fraud. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 325 (2007) (quoted at Opp. 34).

**Access to information.** The Opposition abandons Plaintiffs' scienter theory about purported "access" to a spreadsheet. *See* AC ¶¶ 211, 282. Instead, it

---

[1] Plaintiffs have not disputed that any of the exhibits attached to Defendants' Motion are subject to judicial notice and properly considered at this stage. *See* MTD 5 n.1.

7

focuses on their "core operations" allegations, arguing that the Court should infer Norcross's and Woodall's knowledge of fraud because the Worldpay acquisition was "critically important." Opp. 36. This Court and others have rejected such allegations; the PSLRA "requires more." *Theodore v. Purecycle Techs., Inc.*, 2022 WL 20157415, at *15 (M.D. Fla. Aug. 4, 2022) (rejecting "core operations"); *see also, e.g.*, *Jackson v. Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020) (same).[2]

Plaintiffs also argue that their "core operations" theory is "bolstered" by the fact that Defendants purportedly "tried to sell Worldpay in the summer of 2022." Opp. 36. That theory especially makes no sense. All of the statements about revenue synergies or cross sales that Plaintiffs have not waived pre-date summer 2022. *See* Dkt. 55-2, MTD Ex. A (chart summarizing dates of these statements).

***Departures.*** Norcross's and Woodall's departures from the Company do not support scienter because the allegations "do not cogently suggest that the resignations resulted from . . . involvement in fraud." MTD 28 (quoting *In re Hertz Glob. Holdings Inc.*, 905 F.3d 106, 119 (3d Cir. 2018)). Indeed, Plaintiffs' two cited cases are readily distinguishable: In one, the executive was "terminated, effective immediately" as the company simultaneously announced that it had found "evidence of improper accounting." *Mild v. PPG Indus., Inc.*, 2018 WL

---

[2] Plaintiffs' sole cited case (Opp. 36) comes nowhere close to supporting their theory. It involved an individual defendant who was "directly involved" in "widespread" criminal conduct, and the parties did "not dispute the scienter element" for that individual. *In re Immucor Inc. Sec. Litig.*, 2006 WL 3000133, at *18 (N.D. Ga. Oct. 4, 2006). The court also found scienter for a second individual based on allegations that he "consulted regularly" and "presented" on criminal investigations with the first individual. *Id.*

8

6787351, at *7 (C.D. Cal. Dec. 21, 2018). In the other, the terminated individual had been responsible for implementing regulations with which the company had failed to comply. *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2015 WL 3755218, at *17 (E.D. Pa. June 16, 2015). Those cases had what this one lacks: a clear nexus between the departures at issue and the alleged wrongdoing.

***New theories.*** Plaintiffs now argue that the "specificity" of the challenged statements is enough to show scienter. Opp. 37 n.11. That argument conflates the PSLRA's falsity and scienter requirements. No case supports it. Plaintiffs also now argue that the Court should infer scienter because FIS did not show certain "key performance indicators" during the August 2022 earnings call presentation. *Id.* at 38. This theory makes no sense, especially because the non-abandoned statements about revenue synergies or cross sales all pre-date August 2022.

### C.    The Opposition Confirms There is No Loss Causation.

The Opposition concedes that the three alleged corrective disclosures "do not discuss the Company's revenue synergies, cross-selling, or market share." Opp. 43. That is fatal for loss causation. As the Eleventh Circuit has held – again, in controlling decisions that the Opposition fails to address – loss causation requires a disclosure that "reveals to the market the pertinent truth that was previously concealed." *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1242 (11th Cir. 2023). Disclosures that say nothing about revenue synergies, cross sales, or market share obviously cannot be "reve[lations] to the market" about revenue synergies, cross sales, or market share. *Meyer v. Greene*, 710 F.3d 1189, 1200

9

(11th Cir. 2013) (affirming dismissal with prejudice).[3]

Plaintiffs try unsuccessfully to bridge the gap between the challenged statements and the alleged corrective disclosures by arguing that they all relate to "the failed Worldpay acquisition and the true value of Worldpay." Opp. 44.[4] But Plaintiffs must point to a "***specific*** disclosure" that revealed information about "***specific*** statements" challenged as false or misleading. *Kinnett v. Strayer Educ., Inc.*, 2012 WL 933285, at *16 (M.D. Fla. Jan. 3, 2012) (emphases added), *aff'd*, 501 F. App'x 890 (11th Cir. 2012). Pointing to some announcement that relates generally to financial performance is too "vague." *Metzler Inv. GmbH v. Corinthian Coll., Inc.*, 540 F.3d 1049, 1071 (9th Cir. 2008) (no loss causation because disclosures relating to "financial health" had "extraordinarily vague" connection to the challenged statements); *see also, e.g.*, *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 843 (7th Cir. 2007) (same, because announcements about 1998 and 1999 financial statements were not sufficiently connected to 1997 financial statements); *In re TECO Energy, Inc. Sec. Litig.*, 2006 WL 845161, at *5 (M.D. Fla. Mar. 30, 2006) (similar). Any rule

---

[3] The only specific connection that Plaintiffs attempt to draw between any challenged statement and any alleged corrective disclosure is based on an analyst report, which Plaintiffs argue showed that investors viewed the disclosure on February 10, 2023, as relating to market share. Opp. 45 n.13. That argument is irrelevant because the Opposition raises no arguments about falsity or scienter for the only market share statement challenged in the Complaint (AC ¶ 207), and thus has waived that statement.

[4] Plaintiffs also incorrectly say that Rule 9(b) is inapplicable to loss causation. Opp. 42. "Rule 9(b) applies to all elements of a securities fraud action, including loss causation." *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014). Regardless, the allegations fail to plead loss causation under both Rules 8(a) and 9(b).

otherwise would render the loss causation requirement meaningless by letting plaintiffs label any disclosure followed by a stock price decline as "corrective."

## II.     The Goodwill Statements Should Be Dismissed.

### A.     Plaintiffs' Theories of Falsity Fail.

Plaintiffs do not dispute that the 15 goodwill statements fail under the first prong of *Omnicare*. Under that prong, a statement of opinion can be actionable only if particularized allegations show that the speaker did not "actually believe[]" the statement. *Carvelli*, 934 F.3d at 1322 (citing *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 184 (2015)).

Instead, Plaintiffs argue that the goodwill statements are actionable under *Omnicare*'s second or third prong. Opp. 27–28 & n.8. Under those prongs, opinion statements may be actionable if they contain untrue "embedded statements of fact," or if there are facts "whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *Omnicare*, 575 U.S. at 185, 194.[5] Regardless of which prong applies, the goodwill statements should be dismissed because Plaintiffs' theories of falsity fail. No allegations show that goodwill was impaired at the time of the

---

[5] Plaintiffs wrongly accuse Defendants of "misreading" the law, apparently because Defendants' Motion does not discuss the third prong of *Omnicare*. *Compare* MTD 34–35 & n.10 *with* Opp. 27. *Omnicare* addressed opinion statements under Section 11 of the Securities Act of 1933, and the Eleventh Circuit has extended only its first and second prongs to Section 10(b) claims. *See, e.g.*, *Carvelli*, 934 F.3d at 1322 ("a statement of opinion can be actionable in either of two ways"); *Police & Fire Ret. Sys. of the City of Detroit v. Axogen, Inc.*, 2021 WL 1060182, at *3 (M.D. Fla. Mar. 19, 2021) ("opinions are actionable . . . only in two circumstances"), *aff'd*, 42 F.4th 1218 (11th Cir. 2022).

challenged statements – much less that any Defendant believed it was impaired.[6]

***Confidential Sources In December 2022 Article.*** Plaintiffs focus on a December 23, 2022, New York Times article citing two "people with knowledge" of "efforts by JPMorgan Chase to sell Worldpay" for "at least $30 billion" in the summer of 2022. Dkt. 55-24, MTD Ex. W; *see also, e.g.*, Opp. 24–26, 30. That article fails to show falsity. It suggests nothing whatsoever about the 12 goodwill statements dated before summer 2022. And for the three goodwill statements dated after summer 2022 – *i.e.*, the statements in FIS's Form 10-Q for the third quarter of 2022 – it fails because the anonymous sources cited in the article should receive no weight under *Mizzaro* and *Tupperware*.

Plaintiffs ask the Court to credit those sources anyway because their statements were reported in a "credible news source." Opp. 30 n.9. But anonymous sources do not get a boost from being referenced in a news article – particularly one that devotes only two sentences to FIS and provides no factual basis for their knowledge. *See, e.g.*, *Lopez v. CTPartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 32 n.8 (S.D.N.Y. 2016) (article "cannot be credited" where it did "not disclose the identity" of source); *In re Optionable Sec. Litig.*, 577 F. Supp. 2d 681, 690–91 (S.D.N.Y. 2008) ("allegations made in the article lack specificity"); *In re*

---

[6] The Opposition leaves unclear whether Plaintiffs dispute that the goodwill statements are statements of opinion. *See* Opp. 27–28. Courts of appeals to address the issue have all treated such statements as opinion statements. MTD 34; *see also, e.g.*, *In re Nielsen Holdings PLC Sec. Litig.*, 510 F. Supp. 3d 217, 233 (S.D.N.Y. 2021) ("goodwill estimates [are] opinion statements") (cited in Opp. 28). Even if the goodwill statements were not analyzed as opinions, the Court should reach the same result: they are non-actionable because Plaintiffs lack particularized allegations to support their theories of falsity.

*Wet Seal Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1172–73 (C.D. Cal. 2007) (similar).

Plaintiffs' cited cases (Opp. 28) illustrate this very point. In one, the plaintiffs had allegations from a Vice President of Finance, as well as from another employee who "was in meetings with the individual Defendants." *Zwick Partners, LP v. Quorum Health Corp.*, 2018 WL 2933406, at \*6 (M.D. Tenn. Apr. 19, 2018); *see also In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2018 WL 2382600, at \*3 (S.D.N.Y. May 24, 2018) (similar). By contrast, the sources referenced in the New York Times article are totally unknown; Plaintiffs here have offered no way for the Court to assess "the basis of [their] knowledge." *Mizzaro*, 544 F.3d at 1240.

***Market capitalization and other theories.*** For the goodwill statements prior to summer 2022, Plaintiffs rely on allegations about market capitalization, alleged loss of customers, and employee turnover. *See* Opp. 31–32. As Defendants explained (MTD 39–41), none of those allegations supports an inference that goodwill was impaired under ASC 350-20-35, much less that any Defendant believed they warranted an impairment. Plaintiffs cite no authority supporting their view that those allegations can move the needle. Their only case is irrelevant because it was not about goodwill. *See In re Omnicom Grp., Inc. Sec. Litig.*, 2005 WL 735937, at \*7 (S.D.N.Y. Mar. 30, 2005) (cited in Opp. 31).

Finally, Plaintiffs have no answer to *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017). They argue that *Align* is distinguishable because it involved "positive and mitigating events" relevant to the goodwill analysis. Opp. 33. But the same is true here: FIS

13

and the Worldpay business achieved record years in 2020 and 2021, with 2021's revenue representing FIS's "strongest operating performance in [its] 53-year history." MTD 40. Plaintiffs do not dispute those facts. They simply ignore them.

## B.    Plaintiffs' Arguments Do Not Give Rise To A Strong Inference Of Scienter.

The Opposition does not point to a single allegation specific to Norcross's, Woodall's, or Warren's state of mind – much less allegations supporting a "strong inference" that any Defendant made the goodwill statements with intent to defraud. *Mizzaro*, 544 F.3d at 1238. That is fatal for their claims.

Without any particularized factual allegations about anyone's state of mind, Plaintiffs resort to arguing that scienter should be inferred from the "sheer size" of the impairment in 4Q22. Opp. 39–40.[7] Their two cited cases provide no support. In one, the defendants wrote down "the ***entire amount*** of reported goodwill" for the business at issue. *Dudley v. Haub*, 2013 WL 1845519, at *4 (D.N.J. Apr. 30, 2013) (emphasis added). In the other, the company restated its financial statements and the plaintiffs specifically alleged the defendants' "knowledge of facts" indicating that the statements at issue were "based on discredited assumptions." *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 649–50, 665 (8th Cir. 2001). There are no such allegations here.

---

[7] For the goodwill statements in 3Q22, Plaintiffs also point again to the New York Times article about a purported attempted sale of Worldpay in summer 2022. Opp. 40–41. That article should receive no weight for the reasons explained above: its two sentences about Worldpay come from anonymous sources, and the allegations provide no "foundation or basis" for their knowledge. *Tupperware*, 2023 WL 5091802, at *5.

14

Ultimately, Plaintiffs' scienter theories are negated by the fact that FIS's financial statements were independently audited by KPMG, signed in 3Q22 by non-party Erik Hoag, and never restated. *See* MTD 42–43. Plaintiffs cite *LDK Solar* in an attempt to downplay those facts (Opp. 42), but that case is distinguishable. There, the financial controller claimed the company had "overstated its inventory," the complaint "describe[d] in detail the steps he took to confirm that the Company's publicly reported numbers were false," and he had told the CFO in writing that the accounting was "impossible to verify" and "quite different from what the investors expect or are told." 584 F. Supp. 2d 1230, 1243, 1248 (N.D. Cal. 2008). Again, there are no remotely similar allegations here.

**C.    The Opposition Waives Any Argument That The August 4 and November 3, 2022 Disclosures Show Loss Causation.**

Plaintiffs do not respond to the fact that the first two disclosures said nothing about goodwill, and thus cannot be corrective of the goodwill statements. *Compare* MTD 45 *with* Opp. 42–45. Plaintiffs have thus waived the issue, and those alleged corrective disclosure dates should be dismissed.

<u>**CONCLUSION**</u>

The Court should dismiss with prejudice and deny leave to amend. Plaintiffs "failed to attach a copy" or "describe the substance" of any amendment, and their request for leave to amend is "in a footnote to their brief in opposition" and thus "has not been raised properly." *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) (affirming denial of leave to amend in Section 10(b) case).

Dated: December 19, 2023            Respectfully submitted,

*/s/ Hille R. Sheppard*
Hille R. Sheppard*
John M. Skakun III*
Caroline A. Wong*
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
T: (312) 853-7000
F: (312) 853-7036
hsheppard@sidley.com
jskakun@sidley.com
caroline.wong@sidley.com
*Pro Hac Vice*

Ian M. Ross (FL Bar No. 91214)
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive, Suite 900
Miami, FL 33131
T: (305) 391-5100
F: (305) 391-5191
iross@sidley.com

R. Eric Bilik (FL Bar No. 987840)
MCGUIREWOODS LLP
50 North Laura Street
Suite 3300
Jacksonville, FL 32202
T: (904) 798-2685
F: (904) 360 6304
ebilik@mcguirewoods.com

*Counsel for Defendants*

16

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.


/s/ Hille R. Sheppard


17