# EXHIBIT H

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

_____    )
                                   )
IN RE:   FIDELITY NATIONAL         ) Case No.
INFORMATION SERVICES, INC.         ) 3:23-cv-252-TJC-PDB
SECURITIES LITIGATION              )
_____    )

Videotaped Deposition of DR. DOUGLAS SKINNER,

taken in the above-captioned cause, at One South

Dearborn Street, Suite 3800, Chicago, Illinois,

before Rachel F. Gard, CSR, CCR, RPR, CRR, Notary

Public, commencing at the hour of 8:59 a.m.

Central on Friday, June 27, 2025.

Dr. Douglas Skinner
June 27, 2025

A  To the extent it's been conveyed to me at this time, yes.  This is what I've been asked to do at this time.  It could, as always, be the case I'm asked to do additional analysis or issue additional opinions in the future at some other stage of the case.  But at this stage, paragraphs 8 and 9 reflect the full scope of my assignment.

Q  Were you asked to opine on the issue of whether the alleged misstatements had an impact on FIS's stock price during the alleged class period?

A  So when you say "the alleged misstatements," let me first be clear that the alleged misstatements I was asked to consider are the set of revenue synergy statements, the cross-selling statements, and the goodwill statements as detailed in my report.  With respect to those, I was not specifically asked to evaluate -- let me have you repeat the relevant language in your question.

Q  To evaluate and opine whether the alleged misstatements had an impact on FIS's stock price during the alleged class period.

A  So at this stage, I have not been asked to explicitly opine on whether the alleged misstatements, again, the three sets of

Dr. Douglas Skinner
June 27, 2025

misstatements that I specify in paragraph 9,

impacted the company's stock price.

Q   And you stated there are three sets of

misstatements laid out in your report, correct?

A   Three sets of alleged misstatements that I

have been asked to address, yes.

Q   And there are other statements,

misstatements alleged in the complaint that are

not included in your report, correct?

A   That is my understanding, yes.  There are

statements beyond the set of three statements that

I've been asked to consider.

Q   How did you determine which of the alleged

misstatements fell into your defined categories?

A   I believe this categorization was

something that was provided to me by counsel.

It's summarized in the relevant exhibits.  I will

also say that the categorization made sense to me

based on my reading of the complaint.

Q   Did you have any concerns with the

categorization of the three categories?

A   As I mentioned in the previous response,

the categorization of the sets of statements into

these three categories was something that was

provided to me by counsel but made sense to me

Dr. Douglas Skinner
June 27, 2025

be corrective on each of the three dates and evaluate the extent to which those were different. And then with respect to the analysts, to see whether the allegedly corrective information, including the revenue synergy statements, and including the amounts of the revenue synergies were inaccurate when made.

So I'm evaluating in part the extent to which plaintiffs' claim is that the revenue synergy statements were inaccurate, including with respect to the amount of revenue synergies.

Q   Did you consider that these statements were false or misleading because they concealed from the market the success of the Worldpay acquisition?

MR. SKAKUN:  Object to form.

A   So my focus was on -- based on Exhibit 2 and based on what I just conveyed, plaintiffs' allegations that these statements were false and misleading because as plaintiffs allege, the defendants had manipulated the amount of revenue synergies in the revenue synergy calculations and that the amounts of revenue synergies reported in those statements were inaccurate at the time they were made.  That's what I was asked to evaluate.

Dr. Douglas Skinner
June 27, 2025

And that was my understanding of the so-called

relevant truth with respect to those statements.

Q  So your report did not consider that the

revenue synergy statements were false or

misleading because they portrayed the Worldpay

acquisition as a success when, according to the

complaint, it was a failure?

MR. SKAKUN:  Objection.

Mischaracterization.

Q  Did you consider that?

A  So I think I just point to Exhibit 2 and

the assignment I was given in terms of evaluating

the accuracy or lack thereof of the revenue

synergy statements as alleged by plaintiffs.

That's what I evaluated.  The extent to which that

is connected to the overall success of the

transaction is not entirely clear to me.

Q  Did you consider the fact that the market

viewed revenue synergies as a proxy for the

success of the acquisition?

MR. SKAKUN:  Objection.  Are you

representing that as a fact?

MR. MANNINGHAM:  I'm asking if he

considered it.

Q  I will direct you to the complaint.  So in

the complaint, if you turn to page 34,

paragraph 96, the complaint alleges in

paragraph 96 that because defendants used revenue

synergies and cross-sellings as proxies for the

success of the Worldpay acquisition, investors

closely monitored the company's revenue synergies

and cross-selling efforts to determine whether the

Worldpay acquisition was a success.

Did you consider that allegation?

MR. SKAKUN:  Object to form.

A  So I understand this is part of the

allegation.  What I was asked to evaluate more

specifically was the revenue synergy statements

themselves and the associated relevant truth that

I had summarized in Exhibit 2.

Q  So you did not consider this allegation?

MR. SKAKUN:  Objection.  Mischaracterizes

his testimony.

Q  Did you consider this allegation?

MR. SKAKUN:  Objection.

A  So I reviewed the complaint.  I'm aware of

this, among other aspects of the complaint.  My

assignment was to evaluate the revenue synergy

statements and the associated relevant truth as I

have summarized in Exhibit 2 of my report and

Dr. Douglas Skinner
June 27, 2025

perform the assignment that we see here in

paragraph 9.

Q  If you had considered that the revenue

synergy statements concealed the success of the

Worldpay acquisition, would that change anything

in your report?

MR. SKAKUN:  Object to form.

A  That is a broader question than I have

been asked to consider here.  I've been asked to

consider, as I mentioned, the revenue synergy

statements, including the associated relevant

truth that's indicated in Exhibit 2 of my report.

Q  Now, sticking with the revenue synergy

statements, you compared the -- those statements

with the three corrective disclosures; is that

correct?

A  Just to be clear, it's a little more than

that as indicated in the assignment.  I was asked

to compare the alleged relevant truth that

plaintiffs claim was concealed by the revenue

synergy statements to the alleged corrective

information on each of the three dates.

Q  So I want to be clear.  Your answer said

you compared the alleged relevant truth that

plaintiffs claim was concealed by the revenue

Dr. Douglas Skinner
June 27, 2025

synergy statements.  However, you did not consider the allegation in 96 that investors viewed revenue synergies and cross-synergies as proxies for the success of the acquisition; is that correct?

MR. SKAKUN:  Objection.  Mischaracterization.

A  So we just indicated my assignment, which was to compare the alleged relevant truth that plaintiffs claim was concealed by the revenue synergy statements.  What I do in Exhibit 2 to make that clearer is to specify my understanding from the complaint of the relevant truth that was concealed by each of the revenue synergy statements.

Q  But your understanding of what was concealed, the relevant truth that was concealed, does not consider this allegation in the complaint, the allegation in paragraph 96?

MR. SKAKUN:  Objection.  Mischaracterization.

Q  You can answer the question.

A  So, again, the way I achieved -- I approach my assignment was to provide my understanding of what I believe the relevant truth was, which was the amounts of the revenue

synergies that the company reported and plaintiffs' allegation that those amounts had been manipulated by the company.  So that's -- those are the relevant truth that I was asked to consider, that I considered here.

The statement that you're alluding to seems to go beyond that.

Q  So you didn't consider that?

MR. SKAKUN:  Same objection.

A  To the extent that plaintiff is alleging something about the success of the transaction being connected to the -- being part of the relevant truth, that is not something I specifically considered, no.

Q  I want to start with the first corrective disclosure.  And throughout the day, when I say "first corrective disclosure," I mean the August 4th, 2022, corrective disclosure.

What is your understanding of the first corrective disclosure as alleged in the complaint?

A  I think the best way to address that is to go to the relevant portion of my report, which is Section 5.  In Section 5, I provide some detail on what I understand to be the alleged corrective information on each of the three dates.  In

Dr. Douglas Skinner
June 27, 2025

Q  Do you have any opinion on whether the alleged misstatements were material to investors?

A  This is in the context of the goodwill statements or more generally?

Q  Any of the statements.

A  I was not asked to analyze that.

Q  Were you asked to analyze whether investors relied on the statements at the time they were made?

A  I was not asked to evaluate that.

Q  Are you familiar with the term front-end price impact?

A  I have heard reference to that term in the context of 10b-5 security cases, yes.

Q  What is your understanding of that term?

A  My understanding of that term, as an economist as opposed to a lawyer, is that if we're talking about front-end price impact, as it's termed, one is likely referring to potential inflation in the stock price that results from alleged misrepresentations made in the earlier part of a proposed class period.

Q  Could you please turn to paragraph 183 of the complaint.  So on May 7th, 2020, the company, meaning FIS, filed a press release announcing its

Dr. Douglas Skinner
June 27, 2025

of the alleged misstatements were generic statements?

A  I have not been asked to analyze that specifically, no.

Q  And you have not been asked to conduct any sort of event study analysis to consider whether the misstatements impacted FIS's stock price at the time they were made?

A  I have not been asked to do any form of event study at this stage of the case.

Q  Have you ever served as an expert in loss causation?

A  So I have in a number of securities cases that I've worked on been asked to provide a report of what I would characterize as a loss causation and damages stage of litigation.

Q  And what kind of analysis do you do in those reports?

A  The analysis that I am asked to do in those reports, as we discussed this morning, I have been engaged on behalf of defendants in those cases.  So my role is, as defendants' expert, is to provide a rebuttal report in response to a plaintiff economist's expert report on loss causation and damages.

that I've been asked to do here is different from what I just described.

Q  Is the analysis that you were asked to perform here similar in any way to the analysis that you would perform as an expert at the loss causation stage?

MR. SKAKUN:  Objection to form and scope. This is a hypothetical.

A  So I think one of the things that one is asked to do often at the loss causation stage is to consider whether there is what I would call an economic connection between the alleged misstatements and the alleged corrective information.  And so that is sometimes part of what I'm asked to consider in those cases.

Here, what I've been asked to do is evaluate the extent to which the relevant truth that plaintiffs are alleging was the same or distinct from the corrective information.

Q  So you said at the loss causation stage, you would consider whether there is what you would call an economic connection between the alleged misstatements and the alleged corrective information.

What do you mean by "economic connection"?

Dr. Douglas Skinner
June 27, 2025

MR. SKAKUN:  Same objections.

A  So one of the things that is assessed at the loss causation stage is whether the alleged misrepresentations caused ultimately losses by plaintiffs.  And so in that sense, one of the things that one would do is to evaluate whether in an economic sense, there was a connection between the alleged misrepresentations and plaintiffs' losses, usually as manifested in stock price declines.

Q  So you said you would evaluate whether, in an economic sense, there was a connection between the alleged misrepresentations and plaintiffs' losses.

How is that different than what you did here?

MR. SKAKUN:  Same objections.

A  So in that type of analysis, as I mentioned, I'm often required or part of the analysis will often include some form of event study analysis.  That was not what I was asked to do here.

What I was asked to do here was essentially compare the alleged relevant truth to the alleged corrective information and evaluate

Dr. Douglas Skinner
June 27, 2025

the extent to which they addressed the same or

distinct economic and accounting concepts.  That's

part of the assignment here.

Q  So would you say the two are similar in

any ways?

MR. SKAKUN:  Objection to form.

Hypothetical.

A  So from the point of view of an economist,

I want to be careful because I understand that

assessing loss causation and damages is a

different part of the legal process with different

legal implications from class certification.  And

so my understanding is that from a legal

standpoint, assessing loss causation and damages

is different from what one might do at class cert.

Having said that, what I have been asked

to do here is, from an economist standpoint, not

dissimilar in the sense that I've been asked to,

again, to compare the alleged relative truth to

what plaintiffs are alleging is corrective

information.

Q  So could you please turn to page 72 of the

complaint?

MR. SKAKUN:  You said 72?

MR. MANNINGHAM:  72, yeah.  It's

Dr. Douglas Skinner
June 27, 2025

paragraph 195.

Q  Do you agree that this statement in paragraph 195 was alleged by the plaintiffs to be a false and misleading statement?

MR. SKAKUN:  Objection.

A  I understand that this is one of the alleged misrepresentations, yes.

Q  Is this one of the statements that you did not consider in connection with your -- the scope of your report?

A  That's correct.  I was not asked to consider this statement.

Q  Could you please turn to page 76 of the complaint, paragraph 207?  It's the very bottom of page 76.

A  Yes.

Q  So this is a statement from November 16th, 2021, where Norcross stated:  There's no way you can say that FIS is losing share.  Just the exact opposite.

Were you asked to review this statement in connection with your report?

A  This statement was not part of the assignment I was given.

Q  Would you agree that this statement deals